## Ritzman et al., Appellants, *v.* Coal Township School Directors.

Argued November 30, 1934. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

M. A. Kilker, with him Cyril C. Kilker and Richard H. Klein, for appellants.

S. L. Gribbon, with him F. H. Strouss and Carlton Strouss, for appellees.

Opinion by Mr. Justice Schaffer, January 7, 1935:

Plaintiffs as taxpayers filed their bill against the school directors of Coal Township, in which they prayed, among other things, for a mandatory order on defendants to prepare a proper budget, for a proper tax levy in accord with such budget, for an injunction restraining defendants from delivering to the tax collector the tax duplicate for the school year 1934-5 under the present tax levy; restraining defendants from making contracts until the budget is reformed; restraining them from paying to the school treasurer any compensation for acting as treasurer and from paying to the tax collector any amount above a sum named. The court dismissed the bill and we have this appeal by plaintiffs.

The case in the court below took a somewhat unusual course. No testimony was taken, but plaintiffs made offers of proof. Upon these offers the case was disposed of. We will not enumerate all of the proffered testimony.

It will suffice to set out such portions as we think called for other and further action by the court below.

It was proposed to prove that a contemplated payment of $7,000 for tax collector's commissions is unreasonable in view of the services rendered, that 84% of the school taxes collected by the tax collector in the preceding year were paid by four large taxpayers without any effort or solicitation by the tax collector other than that of receiving the amount of the tax, signing receipts in payment thereof, and endorsing four checks, that for this service, in the collection of all taxes from these four taxpayers, the collector will receive in commissions the sum of $6,630.97, that from the same taxpayers he will obtain for collecting township taxes $3,683.88, for collecting poor taxes $3,131.29, and for collecting county taxes $994.65, making a total remuneration to him on the taxes paid by these four taxpayers the sum of $14,440.79; that in addition he will receive commissions on collections from the other taxpayers in the township, plus compensation, for acting as treasurer for the township, amounts which will cause his total remuneration to aggregate $17,000. It was suggested that the payment of $7,000 for the collection of school taxes is an arbitrary abuse of official discretion by the school directors and that their determination to pay such a large amount for their collection has been influenced by other considerations than the public interest.

Another offer of proof was that the work incident to the office of treasurer of the school district is practically entirely rendered by the depository banks of the district free of charge and that the services of the school treasurer in connection therewith are comparatively negligible; that the treasurer does not perform any extra services because of his office as treasurer, since the depository banks prepare and submit to the board complete statements of receipts and disbursements and furnish copies thereof for the secretary and treasurer; that the treasurer does not make the deposits nor prepare the official

reports of the school district nor perform any bookkeeping work in connection with his office and that the proposed payment of the sum of $5,000 to him constitutes an unconscionable use and squandering of the tax money of the district.

A third offer was to prove that the sum of $2,000 to be paid to the secretary, who is a member of the board, is grossly excessive in view of the services and labor performed by him; that in addition to the secretary's compensation, a clerk for the secretary is paid the sum of $1,635, making the total official and clerical charges proposed to be paid by the district for the secretary's work the sum of $3,635; that the salary costs of the secretary's office are greater than those of any other district in Schuylkill or Northumberland Counties of practically the same size and far in excess of costs in other districts comparable in size, attendance and conditions throughout the Commonwealth. Other offers were to show that the payment for legal services is exorbitant and unjustifiable, as are those for auditors, for attendance officers, for teachers' salaries, for textbooks and for various other employees of the board. We shall confine our attention at this stage of the case to the commissions proposed to be paid to the tax collector and to the salaries provided for the treasurer and secretary.

We learn from the opinion of the court below that the budget of the school district calls for the expenditure of $473,242.50 and that, allowing for the deduction of the state appropriation, $415,903.75 is to be raised by taxation. To provide these funds the school directors have a fixed levy of 24½ mills for general purposes and 5½ mills for sinking fund purposes.

In disposing of the case the court below said: "Were this court the school board, we might, and no doubt could, find a way to economies in the administration of the district business. A reduction of the budget could be properly and intelligently effected only after survey and study. But we are not the school directors, we cannot

attend the board meetings to discuss reports and work out economies, nor have we any power to send an agent or investigator. We cannot interfere with the exercise of discretionary powers by a school board so long as the limits of those powers are not exceeded, and no fraud, malice, bad faith or improper motives are shown."

We think this was a mistaken attitude by the court below, particularly with reference to the amounts to be paid to the tax collector, the treasurer and the secretary. If the offers of proof can be sustained by testimony, it would appear that the payments to be made are grossly excessive. This the court itself seems to have thought, because, in the course of its opinion, it states: "We might declare, in view of the heavy burdens of taxation, that some of the expenditures proposed in the budget are unwise." It further held that the sums to be paid to the treasurer and the tax collector are authorized by law, reaching this conclusion because of the provisions of the School Code fixing maximum compensations. The fixing of maximum compensation does not mean that such sums can be paid by school directors where the value of the services rendered in nowise approximates such remuneration.

The court, for the conclusion to which it came, seems to have relied on the case of Robb v. Stone, 296 Pa. 482. We think the court misinterpreted that case as applied to this one. There we said that the determination of a board of school directors regarding a matter committed to its discretion presumptively rests upon considerations of the public welfare and has been reached by the exercise of intelligent judgment, that he who asserts otherwise has a heavy burden to carry when attempting to prove his contention. We are of opinion that in the instant case this burden would have been met if the facts proposed to be shown proved to be in accord with the offer. That case involved, not the salaries of employees of the board, but the building of a school. In the course of the opinion stating a general principle, we said at page

492: "When the contention is that the proposed action is unwise, no matter by what consensus of opinion this is shown, the law will refer it to mistaken judgment over which it has no supervision. But if it cannot be so referred; if the facts admit of no other reasonable conclusion than that the determination of the board has been influenced by other considerations than the public interests, no matter what these may have been, the law will regard it as an abuse of power, a disregard of duty, and it becomes the duty of the courts to interfere for the protection of the public." In that case, the court did interfere in aid of the public's complaint and we affirmed.

A consideration of some of our decisions will show that the determination of the court below that it was without authority to review and correct the actions of the school board was a mistaken one. In St. Clair School Board's App., 74 Pa. 252, we held that even when legislative authority is given to tax for certain purposes, if the tax levied is clearly in excess of the sum properly required for that purpose, its collection may be enjoined. To the same effect is Conners' App., 103 Pa. 356. In Hibbs v. Arensberg, 276 Pa. 24, 26, we said: "Executive officers of . . . school districts have many discretionary powers in performing their functions; ordinarily courts will not interfere with this exercise, but if it appears their action is based on a misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice, courts will intervene to prevent an abuse of power adverse to public welfare. . . . Abuse of discretion does not, as a rule, come from unwise acts or mistaken judgment, but generally springs from improper influences, a disregard of duty or a violation of law." The same ruling was made in Lamb v. Redding, 234 Pa. 481.

Mason v. Hanover Twp. School Dist., 242 Pa. 359, is a case in which a bill in equity was filed by a taxpayer to restrain school directors from paying excessive compen-

sation to a tax collector, and in the bill, as here, it was set up that the amount to be paid to the tax collector would be excessive. It was there contended that the power given to the school directors to pay such commissions to the collector as should be determined by them is an absolute power and not subject to revision by a court of equity. Answering this contention, we said, page 363: "There must be somewhere a line of demarcation between the exercise of reasonable official discretion in fixing compensation upon the one hand, and a clear abuse of that discretion, and the unreasonable performance of duty, upon the other. . . . It [the act of assembly] contemplates the exercise of reasonable discretion by the school board, in the interest of the public. The language of the School Code is not, however, to be construed as vesting in the school board an arbitrary discretion, to be used in defiance of the public interest and without restraint." We there held that the amount of compensation which the school board attempted to allow the tax collector was out of all reasonable proportion to the service rendered and held the court justified in assuming jurisdiction and in taking action to protect the interests of the public. In concluding the opinion, we observed, page 364: "The findings of fact, and the evidence upon which they rest, leave us in no doubt that in fixing the rate of compensation of the tax collector, the school board lost sight of its obligation to protect the public interest. We cannot regard its action as the exercise in good faith of reasonable discretion." Under the offers of proof in the pending case, our conclusion would be the same so far as the tax collector, treasurer and secretary are concerned.

We are of opinion that instead of dismissing the bill the court should have proceeded to a hearing of the matters therein complained of. If its determination shall be that the action of the school board under the circumstances which the evidence shall develop was improper in any of the matters brought to its attention, then the ac-

tion of the school board should be set aside and by its decree the court should indicate the proper course to be pursued.

The decree is reversed with a procedendo; costs to abide the result.