## City of Philadelphia v. Houlihan

*Joseph Sharfsin*, for city.
*Joseph W. Carnwath*, for defendant, petitioner.
*Thomas R. MacFarland, Jr.*, contra.

OLIVER, P. J., January 16, 1940.—Defendant, Vincent J. Houlihan, is the owner of premises 824 North Tenth Street, Philadelphia, Pa.

On October 14, 1938, the three-story brick store and dwelling then situate thereon was condemned by the Bureau of Building Inspection of the City of Philadelphia. On March 1, 1939, the city as plaintiff presented a petition in equity to this court for an order on defendant to remove the building and defendant was ordered and directed to remove the same within five days. On April 11, 1939, the building not having been removed, a second petition was presented to this court by plaintiff, whereupon the sheriff was ordered forthwith to cause the building to be removed. In addition, a writ of assistance was issued on April 12, 1939. After competitive bidding, the sheriff, on April 14, 1939, awarded the contract to demolish the building to R. C. Weldon & Company, lowest bidder, and claimant herein, for its bid of $269. Claimant, accordingly, acting upon the authority of that writ, demolished the building, its work being approved by the bureau of building inspection. Subsequently, claimant presented its petition and rule to show cause why its bill of $269 should not be approved by the court, together with an accompanying rule to show cause why a mandamus should not issue in its favor in that amount.

Defendant found claimant's petition and rule, accompanied by an appropriate notice, in the mail box of his place of residence, 236 Rittenhouse Street, Philadelphia. Waiving formal service, defendant appeared conditionally and, reserving exceptions to the bills and petitions of the City of Philadelphia, and to the service thereof, filed an answer to claimant's petition. To this answer replications were filed by claimant and by plaintiff.

In order to raise directly the issues involved in this case, defendant petitioned for a rule on the city to show cause why service of the petitions and orders of March 1, 1939, and April 11, 1939, should not be set aside and the orders vacated. This rule was allowed and proceedings were stayed pending argument thereon.

Defendant contends that he was not validly served with notice of the petitions and orders of March 1 and April

11, 1939, and that the ordinance of the City of Philadelphia, approved August 31, 1937, Ordinances and City Solicitor's Opinions, 1937, p. 433, known as the Building Code, violates articles III, sec. 6, of our State Constitution in that it attempts to revive and extend an act of the legislature by reference to its title only.

The facts with reference to service are not clear. Defendant avers that no copy of any of the petitions or orders was ever served on him. The city admits that its attempted service of notice of the condemnation and of the petition in equity was made at an address within the city at which defendant did not reside, by there handing the notices to a brother of defendant. It is claimed by plaintiff and denied by defendant that the brother forwarded them to defendant by mail at his proper address within the city. The city in its reply to defendant's answer avers "that defendant had actual knowledge of all the proceedings herein". The record is therefore in such state that, before we can pass upon the question of service and notice, depositions should be taken. It would be useless to require depositions to be taken, however, if the second contention made by defendant is sound. We shall, therefore, consider whether the city's building code violates article III, sec. 6, of our Constitution.

The proceedings instituted before this court depend for their propriety upon the Ordinance of Council of the City of Philadelphia, approved August 31, 1937, supra, entitled: "An ordinance to adopt a building code contained in the Act of May first, one thousand nine hundred and twenty-nine (Pamphlet Laws, one thousand sixty-three), as the building code of the City of Philadelphia under the authority and power of Act eighty-seven, approved April fourteenth, one thousand nine hundred and thirty-seven, to be effective on September first, one thousand nine hundred and thirty-seven; to continue the Bureau of Building Inspection now existing to carry out the provisions of the said code; and to provide penalties."

The Act of May 1, 1929, P. L. 1063, enacted a building code for cities of the first class. This act was repealed by the Act of April 14, 1937, P. L. 313, and the effective date of the repeal was September 1, 1937. By the same act which repealed the Act of 1929, authority was given to Council of the City of Philadelphia to adopt a building code for that city.

In adopting the ordinance mentioned above, council ordained, inter alia, as follows: "That the building code as contained in the Act of May first, one thousand nine hundred and twenty-nine (Pamphlet Laws, one thousand sixty-three), and the authority creating a Bureau of Building Inspection in cities of the first class, is hereby adopted, to be effective on and after September first, one thousand nine hundred and thirty-seven, until such time as a new or modified code shall be adopted."

Defendant contends that council thereby attempted to revive the Act of 1929, and to extend its efficacy beyond the date of its repeal, by reference to its title only and that the ordinance therefore violates article III, sec. 6, of the State Constitution, which provides: "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

We do not agree with that contention. Council was not attempting to revive the act; it was merely adopting as its own building code a well-known code which had originally been set forth in the act, thousands of printed copies of the code having been in general use and circulation throughout the city for a period of eight years. The situation was substantially the same as it would have been if council by reference had adopted a building code which had originally been set forth in some well-known manual published and widely circulated by the Society of American Architects or by some other group allied with the building trades.

An examination of the State Constitution shows that article III deals with "Legislation". It deals with laws of the State and with the powers of the General Assembly. When this article provides that "no law shall be revived", it obviously means "no law shall be revived as a State law". An ordinance is not a law within the meaning of article III of the Constitution.

In the case of Baldwin v. City of Phila., 99 Pa. 164, 170, 171, in an opinion by Justice Paxson, it was held:

"The word 'law' has a fixed and definite meaning. In its general sense it imports 'a rule of action'; in the particular sense in which we are now considering it, it means, 'a rule of civil conduct, prescribed by the supreme power in the state, commanding what is right, and prohibiting what is wrong'. Blackstone. A law is an emanation from the supreme power, and cannot originate elsewhere. It is a rule which every citizen of the state is bound to obey.

"The ordinance of councils by which the plaintiff's salary was increased is not a law, and therefore does not come within the constitutional prohibition. It is a mere local regulation for the city of Philadelphia. It has perhaps the force of law in the community to be affected by it, but it is not prescribed by the supreme power, it concerns only a subdivision of the state, and does not rise to the dignity of a law.

"There is no ambiguity in this section of the Constitution. It is clear and explicit. But when we consider it in connection with the other portions of the 3rd article, there is no room for doubt. It is the article upon 'Legislation', and is very elaborate. It contains thirty-three sections, and is throughout a restraint upon the powers of the general assembly. It imposes numerous restrictions upon the mode by which laws shall be passed, and prohibits legislation upon a large variety of subjects. When, therefore, section 13 declares that 'no law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment', the obvious meaning is that the General

Assembly shall not pass such a law. There is nothing in the article, even by implication, that would justify us in extending the word 'law' to the ordinances of a city. Such an interpretation would not be expounding the constitution; it would be altering it."

In the case of Davis v. Homestead Borough, 47 Pa. Superior Ct. 444, 447, Judge Orlady quoted with approval the above language of Justice Paxson and then said, with respect to article III of our State Constitution: "This construction of the effect to be given this article has been consistently followed by the Supreme Court." It should be noted that Judge Orlady used the words "this article" and did not confine his comment merely to "this section" of article III.

In the case of Klinger et al. v. Bickel et al., 117 Pa. 326, section 7 of article III of the Constitution was under consideration. Although that section begins with the words, "The General Assembly shall not pass any local or special law", Justice Paxson said at page 337:

"The court below, however, held that the ordinance of council was invalid, because it prohibited the erection of frame buildings in only a portion of the borough; that, under the provision of the constitution prohibiting special or local legislation, it was beyond the power of the council, as it was beyond the power of the legislature, to legislate for only a portion of the borough.

"Granted the constitutional prohibition, and that under it the legislature may not pass any law 'regulating the affairs of counties, townships, wards, boroughs, or school districts', it by no means follows that when the legislature by a general law confers upon a borough the power of regulating its local affairs, it may not do so by ordinances that are special in their character. The object of the constitutional provision was clearly to prevent the legislature from interfering in local affairs by means of special legislation; and, if the town councils of cities and boroughs cannot regulate them, they are in a bad way indeed. The principle contended for would prevent the town councils

of a city or borough from passing an ordinance to pave one street, unless it also provided for the paving of all the other streets within the limits of the municipality. In Baldwin v. The City of Philadelphia, 99 Pa. 164, it was decided that an ordinance of the city was not a 'law' within the meaning of that clause of the Constitution which declares that 'no law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment'. The reasoning of that case applies equally to that section of the Constitution prohibiting special legislation."

These three cases taken together show clearly what is apparent from a study of the Constitution itself, that the word "law" as used throughout article III means a State law and not a municipal or borough ordinance. Defendant, however, seeks to avoid the binding effect of the cases referred to by giving a broader meaning to the word "law" in section 6 than it has in the other sections of article III. It is apparent, however, that there is no justification for the making of such distinction.

Defendant further relies upon the case of Norristown v. Norristown Passenger Ry Co., 148 Pa. 87, wherein the Supreme Court in a per curiam opinion affirmed two judgments "upon the opinion of the learned judge of the court below". An examination of the two cases, however, shows that the lower court reached its decision in the first case pending before it without any consideration of the question now involved and that, when the lower court came to consider the second case pending before it, it held: " 'The opinion just filed in No. 31, March T., 1890, governs this case, and judgment must be entered in favor of the defendant.' " After having thus directed that judgment be entered in the second case on the basis of the opinion filed in the first case, which made no reference to the constitutional question now under discussion, the court then proceeded to give additional grounds on which its decision might be based. In the course of that obviously unnecessary discussion, the lower court said (p. 92) :

" 'By the constitution of this commonwealth the legislature is prohibited from passing any local or special law "regulating the affairs of counties, boroughs, etc., or providing or changing methods for the collection of debts or the enforcing of judgments," and "no law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only," and yet all these things have been attempted by this borough ordinance. It is clear that the borough councils could not do what the legislature is forbidden to do and the agreement of the defendants does not mend the matter, otherwise each party to a suit might establish a different course of procedure and provide their own method for the collection of claims.' "

Under the circumstances we do not regard the affirmance of the judgment by the Supreme Court on the opinion of the lower court as an affirmance of the statements made by the lower court in its unnecessary discussion of the question whether a borough council could or could not do what the legislature is forbidden to do. Furthermore, the case of Klingler et al. v. Bickel et al., supra, p. 337, shows very clearly that a city or borough council may in fact do what the legislature is forbidden to do, and it is obvious that this deliberate expression of opinion of the Supreme Court in the opinion by Justice Paxson in Klingler et al. v. Bickel et al., supra, is sound.

Furthermore, as stated earlier in this opinion, the ordinance in question did not attempt to revive a law; it merely provided that a building code set forth in an act which had been repealed (which code was therefore fixed and certain) should henceforth be the city's building code.

We therefore find that the ordinance adopting the building code for the City of Philadelphia is valid and constitutional. In view of that finding, we direct that depositions be taken with respect to service and that, after the taking of depositions, the parties reargue the question of service.