**Kendrick BUCKWALTER, Appellant**

v.

**BOROUGH OF PHOENIXVILLE.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2007.

Decided Jan. 8, 2008.

Richard A. Breuer, Malvern, for appellant.

Anthony T. Verwey, West Chester, for appellee.

BEFORE: LEADBETTER, President Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Kendrick Buckwalter appeals from the June 27, 2007, order of the Court of Common Pleas of Chester County (trial court), which granted the motion for judgment on the pleadings filed by the Borough of Phoenixville (Borough) in a declaratory judgment action brought by Buckwalter. We affirm.

The facts here are undisputed. Section 1001 of The Borough Code (Code), Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46001, governs the compensation of a member of a borough council and provides, in relevant part, that "Councilmen may receive compensation to be fixed by ordinance at any time and from time to time...." Pursuant to this Code provision, the Borough Council (Council) passed an ordinance (Pay Ordinance) on December 20, 2006, amending the Borough's Code of Ordinances to eliminate compensation for Council members and the Council President, effective immediately.[1] Buckwalter, a duly elected Council

---

1. The Pay Ordinance states, in relevant part, that "[t]he President of the ... Council ... shall receive no compensation relative to his or her duties as President.... A Councilperson of the ... Council ... shall receive no

member whose four-year term expires on January 7, 2008,[2] voted against the Pay Ordinance. The mayor of Phoenixville declined to sign the Pay Ordinance but did not return it to the Council with objections. Accordingly, pursuant to section 1007(a) of the Code, 53 P.S. § 46007(a), the Pay Ordinance was enacted on January 9, 2007, the next regular meeting more than ten days after the December 20, 2006, meeting.[3] (Complaint, ¶¶ 5–9, R.R. at 8a.)

On January 17, 2007, Buckwalter filed a declaratory judgment action with the trial court, seeking a declaration that, to the extent that the Pay Ordinance affects the compensation of Council members during their current terms of office, it violates Article III, section 27 of the Pennsylvania Constitution, which provides that "[n]o law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." (Complaint, ¶ 10.) The Borough filed a timely answer, admitting the facts alleged in Buckwalter's Complaint but disputing Buckwalter's legal conclusion that the Pay Ordinance violated Art. III, § 27 of the

Constitution. Thereafter, the parties filed cross-motions for judgment on the pleadings pursuant to Pa. R.C.P. No. 1034(a).[4]

By order dated June 27, 2007, the trial court denied Buckwalter's motion, granted the Borough's motion and entered judgment in favor of the Borough. In doing so, the trial court stated:

> The resolution of this matter is controlled by a Pennsylvania Supreme court case decided in 1881, *Baldwin v. City of Philadelphia,* 99 Pa. 164[, 1881 WL 13869] (Pa. 1881). In *Baldwin,* the Court was called upon to consider a city ordinance that increased the salary of Philadelphia's chief commissioner of highways. In construing the identical constitutional provision as presented instantly (then numbered Art. III, § 13),[5] the Court held that the word "law" as used in the provision did *not* include a municipal ordinance, for a law is "an emanation from the supreme power, and cannot originate elsewhere." *Id.,* 1881 WL 13869, [at *] 6. This holding has not since been overruled and remains the law today.[6] While [Buckwalter]

---

compensation relative to his or her duties as members [sic] of Council." (R.R. at 12a.)

**2.** Council consists of eight members elected to four-year terms. Half of the Council is elected at each biannual municipal election, so that four incumbent Council members are serving terms ending on January 7, 2008, and the other four incumbents are serving terms ending on January 4, 2010. (Complaint, ¶¶ 3–4, R.R. at 8a.)

**3.** Section 1007(a) of the Code provides, in pertinent part, that if an ordinance passed by a council is not returned by the mayor to the council at a regular meeting within ten days after being presented to him, the ordinance shall have the full force and effect as if the mayor had approved it. 53 P.S. § 46007(a).

**4.** Pa. R.C.P. No. 1034(a) provides that "[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay the

trial, any party may move for judgment on the pleadings."

**5.** Article III, § 13 of the Pennsylvania Constitution of 1874 was renumbered as Article III, § 27 in the Pennsylvania Constitution of 1968; however, the original language of the section remains unchanged.

**6.** The court, in *Baldwin,* stated:

> The error into which the learned judge below inadvertently fell was in applying the above section of the constitution to this case. The language of that instrument is: "No *law* shall ... increase or diminish his salary," & c. The word "law" has a fixed and definite meaning. In its general sense it imports "a rule of action"; in the particular sense in which we are now considering it, it means, "a rule of civil conduct, prescribed by the supreme power in the state, commanding what is right, and prohibiting

makes several intriguing arguments before this court that Art. III, § 27 does apply to invalidate the [P]ay [O]rdinance, I am not at liberty to ignore controlling precedent. Accordingly, I find that the [Pay Ordinance] which eliminated the [C]ouncil members' salaries is not unconstitutional, and judgment is properly entered in favor of [the Borough].

(Trial ct. op. at 2, n. 1.) Buckwalter now appeals to this court.[7]

Buckwalter argues that the trial court erred in relying on *Baldwin* to grant judgment on the pleadings in favor of the Borough, reiterating his contention that the Pay Ordinance is constitutionally invalid to the extent that it alters the compensation of incumbent Council members during their current terms. Although acknowledging that *Baldwin* appears to control this case, Buckwalter maintains that a more exacting and nuanced analysis of *Baldwin* demonstrates otherwise.

Buckwalter first notes that Pennsylvania courts consistently have held that a municipality has no inherent powers but, rather, is a creation of the state, possessing only those powers expressly granted to it by the legislature or arising by necessary implication. *Lighton v. Abington Township*, 336 Pa. 345, 9 A.2d 609 (1939). Arguing that the legislature cannot grant powers to others that it does not possess itself, Buckwalter contends that the constitutional prohibition against mid-term changes in compensation for public officials that is imposed on the General Assembly by Article III, § 27 must apply with equal force

---

what is wrong." Blackstone. A law is an emanation from the supreme power, and cannot originate elsewhere. It is a rule which every citizen of the state is bound to obey.

The ordinance of councils by which the plaintiff's salary was increased is not a law, and therefore does not come within the constitutional prohibition. It is a mere local regulation for the city of Philadelphia. It has perhaps the force of law in the community to be affected by it, but it is not prescribed by the supreme power, it concerns only a subdivision of the state, and does not rise to the dignity of a law.

There is no ambiguity in this section of the Constitution. It is clear and explicit. But when we consider it in connection with the other portions of the 3rd article, there is no room for doubt. It is the article upon "Legislation," and is very elaborate. It contains thirty-three sections, **and is throughout a restraint upon the powers of the general assembly.** It imposes numerous restrictions upon the mode by which laws shall be passed, and prohibits legislation upon a large variety of subjects. When, therefore, section 13 declares that "no law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment," the obvious meaning is that the General Assembly shall not pass such a law. There is nothing in the article, even by implication, that would justify us in extending the word "law" to the ordinances of a city. Such an interpretation would not be expounding the constitution; it would be altering it.

*Baldwin*, 99 Pa. at 170–71 (italics in original, bolding added).

7. A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists and that the moving party is entitled to judgment as a matter of law. *Dunn v. Board of Property Assessment Appeals and Review*, 877 A.2d 504 (Pa.Cmwlth.2005), *aff'd per curiam*, —— Pa. ——, 936 A.2d 487 (2007). In reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of an appellate court is plenary. *Id.* The reviewing court must determine if the action of the trial court was based on clear error of law or whether there were facts disclosed by pleadings which should properly go to a jury. *Id.* In conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. *Id.* Only when the moving party's case is so clear and free from doubt that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings. *Id.*

to the Borough. In support of his argument, Buckwalter relies primarily on *Denbow v. Borough of Leetsdale*, 556 Pa. 567, 729 A.2d 1113 (1999) (holding that the prohibition of Art. III, § 26 also applies to a borough),[8] *Lighton*, (holding that the prohibition of Art. III, § 20 (now § 31) also applies to a township),[9] and *Trinisewski v. Hudock*, 90 Pa.Cmwlth. 159, 494 A.2d 504 (1985) (holding that a 1982 county ordinance increasing a county official's pay was constitutionally valid under Art. III, § 27 as long as its operation was limited to future office holders, while a 1984 ordinance reducing that pay was constitutionally invalid if applied during the term of an incumbent).[10]

In light of this case law, Buckwalter contends that the holding of *Baldwin* that an ordinance is not a "law" within the meaning of Art. III, § 27 is irrelevant, asserting that the court focused on how a municipality exercised a power (by ordi-

**8.** Art. III, § 26 of the Constitution provides in pertinent part that no bill shall be passed giving any extra compensation to a public officer after services have been rendered or a contract made. In *Denbow*, the borough entered into a collective bargaining agreement with police officers covering the terms of employment, including wages, through 1994. In 1993, the borough council voted to amend the agreement and give certain officers pay raises in 1994. Subsequently, new council members voted to repudiate the amendment, and the borough refused to pay the approved increases. In response to a breach of contract action brought by the officers, the borough argued that the pay raises were invalid under Art. III, § 26 and cited supporting case law. The officers did not dispute that the pay increases were extra compensation to public employees after a contract with those employees had been made. Rather, they cited case law for the proposition that the proscription in Art. III, § 26 applied only to actions of the General Assembly, not to actions of local municipalities. Noting that neither side had presented decisions that were directly on point, our supreme court held that the principles embodied in Art. III, § 26, circumscribing the General Assembly's authority, apply with equal force to municipalities.

**9.** Former Art. III, § 20 (now § 31) provides, *inter alia*, that the General Assembly shall not delegate to any private corporation any power to interfere with or perform any municipal function whatever. In *Lighton*, suit was brought to enjoin the township from relying on the Act of 1937 to enact ordinances providing for construction of a sewage system, issuance of bonds in payment and operation of the system by a private corporation in the case of defaults. The plaintiffs argued that the statute relied on by the township as authority for its action violated Art. III, § 20 of the Constitution by allowing the township to vest control and management of its sewage system in a private corporation. Agreeing with the plaintiffs, the court stated:

> We think the township, as the governmental agent of the state, is subject to the same prohibition to which the state is subject. Counsel for defendants contend that the challenged statute 'does not delegate to a private corporation any power' but that 'It does authorize a municipality voluntarily to enter into an agreement with a private corporation, such as a bank or trust company, representing, as a trustee, the bondholders.' As the constitution specifically deprives the state of power to delegate the management of the municipal property to a private corporation, certainly the agent, the township, cannot make such a delegation; the effect of the limitation on the principal would be destroyed if the agent could do what was prohibited.

*Lighton*, 336 Pa. at 353, 9 A.2d at 612.

**10.** In *Trinisewski*, county commissioners enacted a 1982 ordinance increasing the salaries of all county officials. The ordinance was to take effect immediately, but, by its terms, was applicable to each official *when permitted by the State Constitution*. At the time of passage, each of the plaintiffs was in his second year in office, and, therefore, the higher salaries were paid only after the plaintiffs assumed their new terms. Shortly thereafter, a new majority of commissioners enacted a 1984 ordinance repealing the prior ordinance, reducing salaries and refusing to pay the salaries provided for in the 1982 ordinance. The court held that the 1984 ordinance could not be applied retroactively to the plaintiffs. *Baldwin* was not addressed in this opinion.

nance) and ignored the question of whether the municipality constitutionally possessed the power it exercised in the first instance. According to Buckwalter, enactment of the Pay Ordinance simply was beyond the Borough's power, just as it would be beyond the power of its "parent," the General Assembly. *Bakes v. Snyder*, 486 Pa. 80, 90–91, 403 A.2d 1307, 1313 (1979) (holding that a *statute* granting immediate salary increases characterized as a "cost-of-living adjustment" violated Art. III, § 27 and quoting *Sellers v. School District of Upper Moreland Township*, 385 Pa. 278, 282, 122 A.2d 800, 801 (1956), in stating that "[t]he constitutional provision forbidding an increase in salary or emoluments of a public officer during the term of office is inexorable and may not be avoided by indirection.")

Although Buckwalter presents some persuasive arguments, we ultimately must reject his contention that *Baldwin* does not control here.

First, contrary to Buckwalter's contention, the court, in *Baldwin*, did not ignore the question of whether a municipality, as a creation of the General Assembly, may nonetheless escape the constitutional prohibitions set forth in Art. III, § 13 (now § 27) that are imposed on the General Assembly itself. In fact, the court recognized that the lower tribunal had posed that very question and answered in the negative.[11] However, our supreme court reversed and answered in the affirmative,

holding that, because a municipal ordinance is not a "law" within the meaning of Art. III, § 13 (now § 27), a mid-term salary increase could be effected by ordinance without violating that particular constitutional provision. *Baldwin.*

Moreover, the cases relied upon by Buckwalter do not compel a different result from that reached in *Baldwin.* In *Denbow*, the court considered whether *Baldwin's* determination that Art. III, § 13 (now § 27) applied *solely* to the General Assembly should also hold true for Art. III, § 26. *The court recognized the continued validity of Baldwin's holding that the term "law" in Art. III, § 27 does not apply to municipal ordinances;* however, the court declined to extend that precedent to Art. III, § 26.[12] As to the remaining cases cited by Buckwalter, none address the limited application of Art. III, § 27 to municipal ordinances.

Indeed, in the 126 years since *Baldwin* was decided, our courts have consistently upheld its validity and relied upon its holding in addressing cases arising under Art. III, § 27. *See, e.g., McKinley v. School District of Luzerne Township*, 383 Pa. 289, 118 A.2d 137 (1955) (upholding a court's diminution of compensation); *Merwine v. County of Monroe*, 141 Pa. 162, 21 A. 509 (1891) (holding that a statute authorizing county commissioners to change the rate of the treasurer's compensation during his term confers a power expressly held by

---

11. The court quoted the following from the opinion submitted to it for review.

    If the Legislature of the Commonwealth and her executive cannot by any legal device inflict upon the state officers, who shall be quasi private officers, can it be possible that the creature of the sovereign power, to wit, the municipality, may create officers, who, while handling the princely revenues of the first city in the Commonwealth, shall escape, upon the merest of technical con-

structions, the commands of the Constitution?
*Baldwin*, 99 Pa. at 167–68.

12. *See also, Schade v. Allegheny County Institution District*, 386 Pa. 507, 126 A.2d 911 (1956) (holding that the inhibitions of Art. III, § 18 apply to a governmental agency as well as legislative appropriations of state funds, but distinguishing *Baldwin* and recognizing its holding that the term "law" in Art. III, § 27 was held not to apply to an ordinance).

the commissioners); *Crawford County v. Nash*, 99 Pa. 253 (1882) (holding that the county commissioners' diminution of the county treasurer's salary after he was elected was constitutional); *Belitskus v. Stratton*, 830 A.2d 610 (Pa.Cmwlth.) (applying *Baldwin* to reject a taxpayer's allegations that salary increases received by county officials via ordinance violated Art. III, § 27), *appeal denied*, 576 Pa. 726, 841 A.2d 533 (2003); *Murphy v. Bradley*, 113 Pa.Cmwlth. 387, 537 A.2d 917 (1988) (applying *Baldwin* to uphold a court action suspending a wage increase); *Sefler v. Borough of McKees Rocks*, 72 Pa.Super. 81, 1919 WL 2055 (1919) (holding that an ordinance reducing the compensation of a tax collector was constitutional because the reduction was by municipal ordinance and not statute); *Davis v. Homestead Borough*, 47 Pa.Super. 444, 1911 WL 4602 (1911) (holding that a borough ordinance that set the salary of the burgess after his election was a municipal regulation, not a law, and, thus, was constitutional). We are compelled to follow this longstanding precedent.

Next, Buckwalter argues that section 1001 of the Code must be read to incorporate the restriction of Art. III, § 27 because if read otherwise, the statutory provision would be unconstitutional. Buckwalter asserts that the phrase "*at any time and from time to time,*" 53 P.S.

§ 46001, in this statutory provision cannot be read to allow Council members' salaries to change during their terms of office because such a reading would be absurd and, more importantly, would run counter to the presumption that the legislature did not intend to violate the Constitution. 1 Pa.C.S. § 1922(1) and (3).[13] However, even if we were to consider this argument,[14] we would be forced to reject it because section 1001 of the Code does nothing more than codify the longstanding precedent established in *Baldwin*.

Indeed, in *Consumers Education and Protective Association v. Schwartz*, 495 Pa. 10, 432 A.2d 173 (1981), our supreme court recognized that section 1001 of the Code expressly authorizes a borough council to "fix by ordinance" the compensation of council members during their terms of office; in fact, the court acknowledged that Philadelphia City Council could do the same if given such express statutory authority. In *Schwartz*, the court voided a salary increase bill where the Philadelphia City Council members voted for a salary increase during the term for which they were elected. The court reasoned that Philadelphia was still governed by the Act of May 13, 1927, P.L. 992 (Act of 1927), *as amended*, 53 P.S. § 13403, which contains a prohibition against the increase or decrease of the salary, compensation or emoluments of any elected officer after his

---

**13.** The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). In ascertaining legislative intent, it is presumed that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable, 1 Pa.C.S. § 1922(1), and does not intend to violate the Constitution of the United States or of this Commonwealth, 1 Pa.C.S. § 1922(3).

**14.** We point out that Buckwalter would have this court consider the unconstitutionality of section 1001 based on inclusion of that issue

in his memorandum of law in opposition to the Borough's motion for judgment on the pleadings. However, on a motion for judgment on the pleadings, the court may consider only the pleadings, and a memorandum of law is not a pleading. *Del Quadro v. City of Philadelphia*, 293 Pa.Super. 173, 437 A.2d 1262 (1981). Buckwalter's Complaint itself questions only the constitutionality of the Pay Ordinance. The Complaint never references section 1001 of the Code, and Buckwalter's pleadings do not request any relief regarding that Code section.

election, and rejected this court's prior determination that the Act of 1927 had been superseded by the City's home rule charter, which contained more permissive language.[15] In reasoning that is relevant to the case now before us, the court stated:

> [W]hen the Legislature itself seeks to depart from salutary public policy principles, it must express its intention to do so *explicitly*, and any power so granted will be *strictly construed.* ... **[A]lthough there is no doubt that the Charter Commission had the power to supersede the Act of 1927** *if it explicitly chose to do so,* we must adhere to a standard of *strict construction*, and in the absence of an explicit direction on the part of the Commission to abrogate the long standing and wholesome policy of this Commonwealth to preclude an elected official from simultaneously representing both himself and his constituents, we must, if possible, adopt the interpretation of the Charter consistent with the continued vitality of such a venerable and salutary public policy.

*Schwartz*, 495 Pa. at 19–20, 432 A.2d at 178 (italics in original, bolding added). In a footnote to this paragraph, the court cited section 1001 of the Code as an example of the type of explicit statutory language required and observed that

> [i]n the *only* instance where the Legislature has affirmatively authorized a class of municipality to confer in-term salary

increases upon those voting on the measure, it has expressed its intention to do so with explicit specificity: The councilmen may receive compensation to be fixed by ordinance *at any time and from time to time* as follows.... Borough Code, 53 P.S. § 46001 (emphasis supplied).

*Schwartz*, 495 Pa. at 19, n. 13, 432 A.2d at 178, n. 13.

Finally, although admitting that *Baldwin* appears to be on point, Buckwalter maintains that the holding in *Baldwin*, i.e., that a municipal ordinance is not a "law," was either incorrect when that opinion was written or has become incorrect in light of contemporary jurisprudence. According to Buckwalter, *Baldwin* is grounded solely on a definition of "law" taken from Section II of the Introduction to Blackstone's *Commentaries on the Laws of England* (Blackstone). Buckwalter suggests that the court took that definition out of context, and that, in doing so, conveys something very different from the principles Blackstone was expounding. To supply that context, Buckwalter quotes Blackstone at considerable length,[16] (Buckwalter's brief at 17–19), and arrives at the conclusion that, properly understood, Blackstone does not, and should not, stand for the proposition that enactment of "laws" are the exclusive province of the

---

**15.** At one time, the Act of 1927 applied to cities, boroughs, towns and townships; however, it has been repealed insofar as it related to boroughs, *see* Act of July 10, 1947, P.L. 1621, which now are governed by section 1001 of the Code, 53 P.S. § 46001. In *Schwartz*, the court observed that, after the Pennsylvania Constitution was amended to allow for home rule, the legislature recognized that home rule municipalities would set officer's salaries by ordinance and adopted the Act of 1927 to prevent conflicts of interest with respect to salary determinations in home

rule jurisdictions. The court noted further that, although the Act of 1927 was later repealed as to all governmental units except Philadelphia, its prohibition was reenacted by the legislature in large part, and the express authority to alter officers' salaries in-term was given only in the Borough Code.

**16.** The full text of the Introduction to section II of Blackstone's *Commentaries on the Laws of England* is available at http://www.lonang.com/exlibris/blackstone/bla–002.htm.

state. To the contrary, Buckwalter asserts that Blackstone does not define where the supreme power is lodged, but, rather, speaks of law which can be that of a district or town, as well as that of a state or nation. In sum, Buckwalter maintains that, contrary to the holding in *Baldwin,* a municipal ordinance also must be considered to be a "law." [17] (Buckwalter's brief at 20–22.)

However, while appreciating Buckwalter's enlightening discussion of Blackstone, we recognize that, in essence, Buckwalter is asking this court to ignore the precedent that our supreme court set forth long ago in *Baldwin* and that remains good law today. This we may not do.[18]

Accordingly, we affirm.

### ORDER

AND NOW, this 8th day of January, 2008, the order of the Court of Common Pleas of Chester County, dated June 27, 2007, is hereby affirmed.

---

17. Contrary to what Buckwalter would have this court believe, our supreme court, in *Baldwin,* did not declare that an ordinance was not a law for any purpose. The court expressly limited its holding by stating that an ordinance was not a "law" *within the meaning of Art. III, § 27,* and that limitation on *Baldwin* has been recognized and adhered to for 126 years.

18. We acknowledge the appeal and logic of Buckwalter's position. However, if, as Buckwalter maintains, *Baldwin* always was, or has become, incorrect, our supreme court will have to make that determination. We invite their consideration of the issue.